By the Court.—Reynolds, J.
Two questions arise in this case. First. Was the defendant guilty of any negligence contributing to the injury? The defendant is the proprietor of a coal-yard in Baltic-street, in the city of Brooklyn. In his yard he makes use of an elevator for the purpose of receiving coal from carts on the sidewalk, and distributing it through the yard. The elevator is worked by steam, and stands, according to plaintiff’s evidence, eight inches from the line'of the sidewalk. When not in use it is commonly shut off from the street by a sort of sliding door, but at the time of the injury to deceased this door had been left open during an intermission of the work, and while the defendant, who himself acted as engineer, was. absent, leaving the fireman in charge of the place. For some reason, which does not appear, the elevator was in motion, and while.it was coming down slowly, .and, ■ as the witnesses' say, without any perceptible noise, the deceased child was caught by the descending car and crushed. It is very likely that the deceased, drawn by the curiosity of a child, was looking at the engine, which stood a few feet inside, and was just visible from the open doorway. The fireman was back by the engine, and there was no guard or other means of *323 protection or warning against the danger to be apprehended. from the operation of the machinery.
Do these facts present sufficient evidence of negligence on the part of'defendant to warrant the submis-_ si on of the question to the jury %
There is a numerous class of cases holding that the__ owner of land adjoining a highway is bonnd to use care in maintaining his own premises in such a condition that persons lawfully using the highway may do so with safety. If a person, for instance, makes an excavation so near the highway that one lawfully using the way and using ordinary caution might accidentally slip and fall into it, he will be liable for a nuisance to the highway (see Barnes v. Ward, 9 C. B., 392 ; Hadley v. Taylor, L. R., 1 Com. Pleas, 53.
The case of Vale v. Bliss, 50 Barb., 358, was determined upon this principle, and it was there applied in behalf of a man, who, meeting some obstruction at night on the sidewalk, instead of taking the carriage way, turned in upon the premises of defendant, several feet from the line Of the sidewalk, and fell into an area in front of a building in course of erection.
These and the like are cases, however, where persons have been injured while in the ordinary use of the highway for purpose of travel; while it is claimed by defendant, and seems quite probable, that the deceased deviated from the sidewalk for the purpose of looking into defendant’s yard.
There is another class of cases, however, invoked by plaintiff’s counsel, which seems to involve a further principle, applicable, as I think, to the case before us. It will suffice to refer to a few of these. Lynch v. Nurdin, 1 Ad. & E. N. S. 29; S. C., 41 Eng. Com. L., 342; 2 M. & W., 248, has often been cited with approval. Defendant’s servant left his horse and cart unattended in the street. Plaintiff, a child seven years old, got upon the cart in play. Another child incautiously led *324 the horse on, and plaintiff was thrown down and hurt. It was held that the defendant was liable in an action on the case, though the plaintiff was a trespasser, and contributed to the mischief by his own act, and that it was properly left to the jury whether the defendant’s conduct was negligent, and the negligence caused the injury. Lord Deumab", delivering the opinion of the court, said, in substance, that no greater degree of care was to be required than was compatible with his age and capacity, and that if, in getting on the cart, he merely indulged the natural instinct of a child in amusing himself with the empty cart, the defendant could not avail himself of that fact.
Birge v. Gardiner, 19 Conn., 506, was decided by a court of great weight and authority. The defendant had set up a gate on his own land, by the side of a lane through which the plaintiff, a child between six and seven years of age, with other children, was accustomed to pass between his residence and the highway. In passing along the lane he put his hand on the gate and shook it, causing it to fall on him and break his leg. The plaintiff recovered a verdict, which was sustained by the supreme court.
Church, Ch. J., says: “The plaintiff was a child, without judgment or discretion, and it was submitted to the jury to say whether such a child ought to be chargeable with fault, so as to defeat his recovery, or whether or not the acts done by him were not rather the result of childish instinct, which the defendant might easily have foreseen. It might perhaps have been going too far for the court to have said, as a matter of Iuav, that a child of this age could not be. so blameworthy as to excuse the defendant. We will not say that such cases may not be imagined, or may not sometimes occur.
“But it was favorable to the defendant, and he cannot complain of it, that the age and condition of the plain *325 tiff, connected with the circumstances of the case, were put to the jury, for them to determine what degree of fault, if any, was imputable to the plaintiff. It cannot be claimed that the law would require the same acts of caution and prudence in a child as in a man.”
In Whirley v. Whiteman (1 Head [Tenn.], 610), it appeared that the defendant owned a paper mill in Nashville, the machinery of which was propelled by steam. There was a shaft proceeding from the engine house ‘and extending through the wall of the mill house. On the end of this shaft, some eight or ten inches outside the wall, was fixed a cog wheel, which was geared into another cog wheel. The wheels revolved from ten to twenty inches from the ground. They were about twenty feet from the street, in an open space, entirely exposed, without any cover, guard or enclosure. Plaintiff was about three years old, and his mother lived on the other side of the street, nearly opposite the mill. The wheels were generally in motion. Plaintiff a.nd other children were in the habit of playing about the mill. One day when the engineer and other hands were absent at dinner, leaving the wheels running, the plaintiff was caught by them and injured. The wheels might have been easily boxed, or an enclosure made around them, so as to have avoided the danger of injury to any one. The jury found for defendant, and the verdict was set aside as contrary to the evidence, The court say: “We feel clear, upon the facts proved in this record, that the defendants were guilty of negligence, perhaps, it might be said, gross negligence, in leaving machinery so exposed, as that by possibility, it might be the cause of injury to others. . . . In playing about the cog wheels, the plaintiff was but indulging the natural instinct of a child, but yielding to the temptation into which he was led by the negligence of the defendant.” .After noticing the above cases and others, the court say: “These cases rest upon the *326 principle, that the law imposes restrictions upon every one, as well in the use and enjoyment of his property, as in Ms personal actions and conduct, and that though a man do a lawful thing, yet, if any damage thereby befall another, he should be answerable if he might have avoided it” (See Brooms’ Legal Maxims, 248).
I shall notice but one case further on this point. The Sioux City & Pacific R. R. Co., plaintiff in error, v. Stout, lately decided in the U. S.supreme court, 17 Wall., 657, was an action to recover damages for an 'injury sustained upon a turn-table belonging to the defendant (plaintiff in error). We have been furnished with a copy of. the opinion of the court, delivered by Mr. Justice Hunt, which shows that the plaintiff was six years of age, living with Ms parents. The turn-table was in an open space, about eighty rods from the depot, on the defendants’ own land, near two traveled roads, with a few houses in the neighborhood. Plaintiff, without the knowledge of his parents, went with two other boys to the depot, and when they arrived, it was proposed by some of them to go to the turn-table to play. It was not attended or guarded by any employee of the company, and was not fastened or locked, and revolved easily on its axis. Two of the boys attempted to turn it, and the plaintiff’s foot was caught and crushed. The plaintiff recovered a verdict, the judgment upon which was affirmed by the supreme court. The judge below had charged the jury, that to maintain the action, it must- appear by the evidence that the turn-table, in' the condition, situation, and place where it then was, was a' dangerous machine, one which, if unguarded or unlocked, would be likely to cause injury to children ; that they were further to consider, whether, situated as was the defendant’s property in a small town, remote from habitations, there was negligence in not anticipating that injury might occur if it was left unlocked or unguarded. *327 This charge was approved. The court say: “If, from the evidence given, it might justly be inferred by the jury, that the defendant, in the construction, location, management or condition of its machine, had omitted that care and attention to prevent the occurrence of accidents, which prudent and careful men ordinarily bestow, the jury was at liberty to find for the plaintiff.”
This and some of the preceding cases will dispose of any objection arising from the fact that the deceased may have been technically a trespasser. Judge Httiít says : “ We conceive the rule to be this, that while a railroad company is not bound to the same degree of care in regard to mere strangers, who are unlawfully upon its premises, that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injury arising from its negligence, or from its tortious acts.” Upon authority and principle, it seems to me it might well have been left to the jury whether this elevator, so situated, was not a dangerous machine, when left unguarded and in motion, and whether the defendant should not have anticipated just such a casualty as did occur unless some precaution was made use of to insure safety.
It is said the sidewalk at this place was rough and unfinished. It was nevertheless a highway, and perhaps quite as likely to be frequented by children, as if it had been flagged. It would have been quite easy, when no coal was being delivered, to close the sliding door and thus prevent children from coming into dangerous proximity to the machinery ; or at least, it would seem to require some satisfactory explanation of the fact, that while the car was in motion, so close to the sidewalk, and with no barrier between, there was no person about to guard against accidents.
I come now to consider the second question. Was the mother of the deceased guilty of negligence, in permitting him to escape into the street, and wander away *328 to the place of the accident. It appears that the parents of the child lived about a block from the coal yard, in a qniet though somewhat thickly settled portion of the city, inhabited principally by working people, with their families, and where there were bnt few vehicles passing. The father was away at work, and the mother was cleaning the room. The deceased, who is stated, to have been an intelligent and forward child, four and a" half years old, was permitted by the mother to go upon the front stoop, to play with two little boys, whose age does not appear. Deceased was charged not to leave, the stoop, and the mother kept such watch over him as her work permitted, looking out three times during a period of twenty minutes; the last time she missed the child, and immediately started in pursuit, but too late,'as she found him after he was killed.
Judge Grover, in Mangam v. Brooklyn City R. R. Co. 38 N. Y., 455, speaking of the degree of care required in keeping children from the street, says : “ The counsel for the defendant insists that it must be such care as effectually to accomplish the object, and that any thing short of this is negligence. While, on the other hand, it is claimed by the plaintiff, that to constitute negligence in the parent or guardian, there must be an omission of such care as persons of ordinary prudence exercise and deem adequate for that purpose.The latter appears to be the conclusion required by the analogies of the law. ■ Legal negligence is the omission of such care as persons of ordinary prudence exercise and deem adequate to the circumstances of the case.’’
Considering the situation in life of the parents, the character, of the neighborhood where they lived, and. the circumstances under which the deceased was permitted to be upon the stoop, I think it is going too far to say that the court should withdraw the question of negligence from the jury. A great many families-living *329 in the city, who are not able to employ an attendant for children of that age, do, notwithstanding, permit them the liberty of the sidewalk, practically, with a great degree of safety. Í think it will accord with our observation to say, that children of the age of deceased, are often more cautious, when out of doors, than those Of a larger growth. What the law requires is ordinary and reasonable care, taking all the circumstances into account (See Karr v. Parks, 40 Cal. 188).
In Cosgrove v. Ogden, 49 N. Y., 255, the plaintiff was a boy nearly six years of age. The parents lived in New York city, in a locality very much, like that in question here, and permitted the child to go upon the street unattended, where he was injured by the falling of lumber. Judge Grover says, “The law can not assume that such boys are incapable of protecting themselves from any danger to be apprehended in such streets and roads. The question as to negligence of the parents was fairly submitted to the jury, and their verdict clears them from such an imputation.” In the case last cited, it will be observed the child had permission to go into the street, while in the case before us there was an effort, a jury might say,' a reasonable one, to keep the child upon the stoop.
It should also be remarked that the injury to the deceased did not accrue from any of the perils ordinarily, or naturally-incidental to exposure in the street; for all that appears,- the child may have been entirely competent and cautious enough to have avoided them; but the accident was the result of a cause, which the parent would not ordinarily be expected to anticipate, or guard against. If the infant was not sui juris, and it certainly cannot be held as matter of law that it was, it was incapable of forfeiting its remedy against a wrongdoer by its personal negligence (See 38 N. Y., 460 ; Ihl v. Forty-second St. R. R. Co., 47 N. Y., 317).
*330 Some of the authorities noticed in the discussion of the first point also have a bearing upon this.
Although the facts upon which these' questions arise, are substantiality undisputed, it seems to me this is one of these cases, where different minds of equal) intelligence might honestly draw different conclusions from them, and if so, the case should be left to the jury for their determination. This rule is well settled in this and in other States. Speaking of these doubtful cases, Judge Hunt says, in questions above cited, “Twelve men, of the average of the community, comprising men of education, and men of little education, men of learning, and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer, these sit together, consult, apply their separate experience of the affairs of life, to the facts proven, and draw an unanimous conclusion. This average judgment thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.”
My conclusion is that plaintiff was entitled to have the case submitted to the jury, and that a new trial should therefore be granted.
McCue, J., concurred.
Judgment reversed.